W. B. GREENLAW et al. v. J. R. WILLIAMS et al.

1. EJECTMENT. *Deed. Covenants of warranty. Notice to covenantor to defend.* Upon suit being brought upon a paramount claim against one entitled to the benefit of the covenant of warranty, the latter can, by giving proper notice of the action to the covenantor and requiring him to defend it, relieve himself from the burden of being obliged afterwards to prove, in an action on the covenant, the validity of the title of the adverse claimant.

2. SAME. *Covenantor. Proof.* And in such a case, in the absence of fraud or collusion, the covenantor will not be permitted to prove, in the latter action, that the judgment of eviction was not upon an adverse or superior title.

3. SAME. *Notice.* The notice, to have the effect to deprive the warranter of the right to show title, should be unequivocal, certain and explicit, yet it need not appear of record, and no particular form of words is required.

---

FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

L. D. McKISICK, W. MESSICK and E. L. BEECHER for complainants.

VANCE & ANDERSON for defendants.

FREEMAN, J., delivered the opinion of the court.

J. R. Williams, originally a citizen of Tennessee, and Wm. M. Watt, a resident of the State of Indiana. The object of the bill is to recover the purchase money paid by Greenlaw to Watt for a lot No. 358,

in the city of Memphis, as for breach of warranty of title contained in Watt's deed. Williams was sued in the bill on the assumption probably that as he had sold to Watt with covenants of warranty, he was likewise liable to complainants, having had notice of the suit under which complainant had lost the lot under a claim of superior title, assisted by Gough and wife, Alicia Anne, in right of the wife.

There is no contest over the fact, that after the sale, complainants had been ousted of the possession of the lot by said Gough and wife, and had lost the lot sold. The bill was filed in 1859 in the Common Law and Chancery Court at Memphis.

At the appearance term, Watt filed his petition for severance of his cause from Williams, and a removal of it to the Circuit Court of the United States, under the act of Congress authorizing suits brought in a State Court against a citizen of another State to be so removed on the terms therein specified. This was granted by the court, it seems, some time after the application filed, the question being probably held under advisement, and the papers duly sent to the Circuit Court. The case thus stood in that court, an answer having been filed and proof taken, when in January, 1870, the surviving complainant moved that court to dismiss the case and remand to the State Court, for want of jurisdiction, which was done. In April, 1871, a copy of the papers was filed and the State Court assumed jurisdiction again of the cause, but to this action on the part of that court the defendant Watt excepted.

Greenlaw *v.* Williams.

In the mean time, it is proper to state that Williams had demurred to the bill, so far as it sought relief against him, his demurrer was sustained, and the bill dismissed as to him. This was after the petition for transferring the cause to the Circuit Court as to Watt.

The first error assigned here by the respondent is, that the State Court had no jurisdiction of the cause, after the transfer, and could proceed no further in the cause after petition filed and its prayer granted on the terms of the act of Congress.

We do not think this position is well taken under the facts of this case. At the time of the transfer, the law seems to have been settled, that the case was not one which could be split up, and taken by one party alone to the Circuit Court. The fact that after the application Williams was let out of the suit on his demurrer, did not change the state of the case. When the transfer was made, and this after occurring fact not appearing in the record, as a matter of course as it was sent to the United States Court, the defect in the jurisdiction appeared on the face of the papers, and so the court held.

If the case was not in the United States Court, it certainly remained for purposes of jurisdiction in the Court of the State, where it originally commenced. If the State Court originally had jurisdiction, it could not be deprived of it, by a fruitless effort, which failed to remove to the Circuit Court of the United States. It certainly could not be held, that such an effort dismissed complainants' bill.

Unless this was the result, on failure of the attempted transfer, the case remained where it was when the effort was made, and that court could well proceed to adjudicate the rights of the parties.

The main question in the case, however, and the one on which it must turn, arises on this state of facts. Gough and wife filed their bill in May, 1858, for the recovery of the lot. In November, 1858, Greenlaw gave Watt notice in writing of this suit, requiring him to come forward and protect his title. He also notified him that if a recovery was had against him in that suit by Gough and wife, he would read the proceedings and decree in that case as evidence, in a suit which he would bring against said Watt to recover on the covenant of his, Watt's, deed. This notice, by mistake, gave the wrong number, in describing the lot; but it is clear this did not mislead the defendant and could not have done so, as he had never conveyed, or warranted the title of but one lot in the city of Memphis to the Messrs. Greenlaw.

In addition to this, it appears beyond all question that Watt wrote immediately to his friend, Mr. Parker of Fayette county, who had been his agent in paying taxes, and other matters, after his removal from the State, directing him to employ Judge Archibald Wright to look after his interest in connection with the suit, and the title to the lot in controversy. Judge Wright being then on the Supreme bench, could not be employed, but the late Judge Henry G. Smith, with his partner Mr. Stovall, were retained in his stead. It is true it pretty clearly appears, that defendant did

not wish or intend to be "mixed up," to use his own language, in the suit between Greenlaw and Gough and wife, and so instructed his agent, who probably so instructed his attorneys. They, however, went into the case as their view of their duty under the retainer, continued to attend to it, argued it in Chancery and in Supreme Court, and were no doubt diligent in their defense in connection with the counsel of Messrs. Greenlaw. It further appears that this retainer of Smith & Stovall was known to Watt, and probably a correspondence was had between them on the subject during the pendency of the suit.

The bill goes on the theory that this notice to the warrantor made the result of the suit to recover the land conclusive on Watt, as if he had been party in form to such suit, and amounts to a *res adjudicata* of the defective title and branch of the warranty given by him to complainants.

The Chancellor so held, and if the law is found to be so settled, the case ends so far as this question is concerned. So far as we are able to see, this is a new question in this State, and no case adjudging the question has been cited by the counsel in argument. We must, then, decide it on authority and on principle.

We find the result of numerous cases thus stated in Wait's Actions and Defences, vol. 2, 392 : "It is now generally settled in the United States, that upon suit being brought upon a paramount claim against one entitled to the benefit of the covenant of warranty, the latter can, by giving proper notice of the action to

the covenanter and requiring him to defend it, relieve himself from the burden of being obliged afterwards to prove, in the action on the covenant, the validity of the title of the adverse claimant." He cites for this, *Cooper* v. *Watson*, 10 Wend., 205; *Paul* v. *Witman*, 3 Watts & Learg, 409; 26 Ver. R., 708; 34 Com., 195; 5 Halst., (N. J.) 20; 46 Mo., 157, and other cases, and Rawles on Covenant, 4th ed., 218. "And in the absence of any showing of fraud or collusion in such case, the covenantor will not be permitted to prove in the latter action, that the judgment ·of eviction was not upon an adverse or superior title, even though the plaintiff, to save himself from eviction under the judgment, purchased the outstanding title." *McConnell* v. *Danno*, 48 Ill., also 15 Ill., 15, cited. See also 49 N. Y., 571; Allen's R., vol. 11, 370; Freeman on Judgments, 187. The only cases apparently contra to this are from North Carolina. 2 Dev. & Batt, 101; 8 Jones, 88. The weight of judicial opinion is, beyond question, almost entirely in favor of the rule.

It is however held, and properly, that the notice .to have the effect of depriving the warrantor of the right to show title, should be unequivocal, certain and explicit, yet it need not appear of record, and no particular form of words is required. See Wait, vol. 2, 393, and cases cited. In view of the current of authority, as well as other considerations based on reasons of sound policy, we think the rule is correct, and adopt it. While it is beyond question the general rule, that a party is only bound by a suit where he

Greenlaw *v.* Williams.

was plaintiff or defendant, or in priority to one of these, yet this established exception may well stand on the ground that after full notice of the suit, and that he is called on to maintain and protect the title warranted by him, he has every needful opportunity to furnish his covenantee the full evidence of his title, and may, and should have it presented in defense of the title he is bound to guaranty. It is next to certain if it is presented his vendee will certainly avail himself of it to save his property, and if he fails or neglects to do so, when informed of a proper defense, he would inevitably defeat his right to insist on the effect of the notice and lose the advantage of the judgment of ouster as against his warrantor by such negligence. Under these circumstances, it seems the warrantor has all the advantage in presenting his title as if technically a party, and is perfectly protected both from negligence and fraud, if for these causes it should cease to be effective. This being so, why should there be two suits, when one serves all the real purposes of the investigation? We can see no good reason in favor of such a view, nor do we think any can be given.

It is insisted, this notice is insufficient under the rules, because of mistake in number of the lot, and also because not given in time, or in the stage of the suit when defendant could have made effective any defense he may have had to the case.

As to the first objection, it is not tenable. The only purpose of the notice is, that the party shall understand a suit is pending asserting a superior title

to the one warranted, and by which it is or may be imperiled, and that he shall know that it is for the recovery of the property sold by himself, and be called on to defend the title.

That this notice is sufficiently certain in this respect there can be no doubt, and also in the fact, that the result of the suit was intended to be used as evidence against him. He clearly understood it, and employed counsel to look after his interest at once. The fact, that defendant insisted on "not being mixed up with the suit," can be of no avail, if the rule we have approved as to the notice and its effect is to be held good. It is his own fault if he chooses to neglect making the proper defense when in his power, after such notice. This disposes of the question in the case, so far as this aspect of it goes.

Other matters arise in the decree of the Chancellor in deciding upon exceptions taken to an account ordered as to rents of a lot at the corner of Main and Washington streets, in the city of Memphis, taken possession of by the complainants, under a deed from Smith & Stovall, of date September, 1861.

When this lot was taken possession of, it had no house on it; a ground rent was allowed for the period it so remained. April, 1863, the Greenlaws leased the property to Fletcher, at a ground rent of $250 per annum; a few days after, Fletcher leased to John Guinn for a term of five years, with the privilege, and probably the purpose, that he should erect a two story brick building on it. It was a part of this lease that Fletcher had the right, at any time after

two years, to pay costs of construction, less old brick that might be used, and have the house. This lease was transferred to the Greenlaws October, 1864, and they both took the house, paying the ascertained value, $2,339.33.

Two questions grow out of this state of facts:

First, The Chancellor declined to allow the complainant the sum paid for the improvements, probably on the ground, that it had been burned down, so that the lot was vacant when the decree was made.

Second, He refused to charge complainants with the rents or profits, over and above a ground rent, while the property was in the hands of Guinn, the lessee, who erected the building. The amount received was $2,375; the interest on this being at the time of the report $1,285.15.

Both complainant and defendant except to these points of the decree, each to the one affecting himself.

The principle on which the true owner recovering the land, shall account for its enhanced value is, that the improvements are to be his by the recovery, though paid for by another, and a court of equity will not allow him to appropriate to his own use, in this way, the property and money of such party. See 4 Hum., 364. It is equally well settled in our State, that the costs of the improvements is not the test of remuneration, and cannot be recovered, or the value of the work and materials. As said by this court in *Mathews v. Davis*, 6 Hum., 326: "It matters not how much labor he has employed, nor what amount he may have

expended for material, if the estate is not benefitted, he has no claim to compensation from the owner."

We can see no principle on which a party putting up improvements on the land of another, which are burned down while he is in possession of them, can recover as for enhanced value of the property by reason of them, any more than he could if he had removed them himself or torn the house down. It may seem not very sound equity in this case, but we cannot avoid the logical application of the principle, which is that the owner is to pay for what he gets, but this cannot be made to include what he does not get.

As to the rents received by John Guinn, during his occupancy of the property, we do not think complainant is chargeable with them. The property yielding the rents was erected by Guinn and owned by him during this time, as between Greenlaw and Guinn (that is, the house), and not by Greenlaw. After his purchase from Guinn, and ownership of it, he accounts for its rents and profits.

As to the only other question, interest on the purchase money during the war, we do not think the cases suspending interest have any application. They are cases of debts. This is a recovery of damages for breach of covenant, where interest is only used as a measure of damages. Besides, it is clear the party was not prevented from paying by the war—the suit having been commenced before, and litigated until now.

Decree must be drawn in accordance with this opinion. Costs of this court equally divided, as both parties appeal and fail to show error.